**Samuel BORDELON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 67105.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 16, 1985.

George Michael Jamail, Beaumont, for appellant.

James S. McGrath, Dist. Atty., and R.W. Fisher, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

This is an appeal from a conviction for burglary of a habitation in which the jury assessed appellant's punishment at 15 years confinement.

In his 10th and 11th grounds of error, appellant complains of the admission of the two motel keys and a motel key tag; he argues these items were never shown to be relevant to any issue in the case, and as such, were meant solely to prejudice the jury.

The evidence adduced at trial revealed that on August 15, 1979, Glen Wilson, his wife and three children were asleep in adjoining rooms of the Red Carpet Inn in Beaumont when at about 5:00 a.m., Wilson awoke to see "a dark male about 5' 10" or 5' 11", 150–160 pounds striding toward the door at the foot of his and his wife's bed. The man was black and wearing "an apple cap, or cap like sports car drivers wear." Wilson could not see the man's face and was never able to identify anyone as the intruder.

The family discovered Mrs. Wilson's purse and all its contents (including Mastercharge, Visa, Foley's, Joske's, Sakowitz and Conoco credit cards) was missing. There was no evidence of forcible entry into the room.

In the afternoon, between 1:00 and 3:00 p.m. on the same day, a black male identified as appellant, presented a Visa credit card bearing the name "Glenn Wilson" for payment of a camera bag and an air cable release at Thomas Camera Shop. Appellant signed "Glenn Wilson" on the credit slip. On the same day in the early afternoon, appellant presented the same Visa credit card for payment of a Timex watch in a Woolco Department Store in Beaumont, and signed the slip "Glenn Wilson."

Also introduced at trial were photographs of appellant, seized at the time of his arrest, wearing a hat similar to the one observed by Wilson on the burglar, as well as other items which corroborated proof that appellant had used Wilson's credit card at Thomas Camera.

In its case in chief, the State was permitted to introduce over appellant's strenuous objection two motel keys and the tag to a motel key which had been found in a briefcase seized from appellant's car and which

had also contained a black notebook, a purchasing agent's books and other papers appearing to be those of a salesman. The evidence was that neither key fit the Wilson's room nor any other room at the Red Carpet Inn. The trial judge, however, allowed this evidence on the force of the prosecutor's argument that the keys were like "burglar tools:" "It's clearly relevant to the fact that *this man is a burglar.*" [1]

The only real issue in the case was appellant's identity as the burglar.

Appellant's theory of the case was that he had been wrong to use a credit card not belonging to him,[2] but that the State's evidence did not exclude the possibilities that he had found it or that it had been given to him by the true burglar, in either of which cases appellant was not guilty of the burglary.

Clearly, then, the State was entitled to offer any prior specific act of misconduct on the part of appellant consisting of distinctive characteristics which were also common to the burglary of the Wilson family; material distinguishing similarity of an extraneous offense to the primary offense shows the two offenses were the work of the same person. Therefore, it is assured the evidence has greater potential for assisting the jury in resolving the issue of identity than it has for confusing the jury or diverting their attention from the material issues in the case. See generally *Collazo v. State*, 623 S.W.2d 647 (Tex.Cr.App. 1981); see also *Messenger v. State*, 638 S.W.2d 883 (Tex.Cr.App.1982) (Opinion on original submission); *Ford v. State*, 484 S.W.2d 727 (Tex.Cr.App.1972).

But in this case the clear inference the State sought to have drawn from appellant's possession of two motel keys

---

**1.** By the time the State's brief on appeal was written, their sole argument had become that admission of the keys was *"harmless error."* (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

**2.** The trial judge granted a State's motion in limine which prohibited the defense from informing the jury that appellant had already

been convicted of the two credit card abuse transactions and sentenced to four years confinement; but then the court permitted the prosecutor to argue that defense counsel was asking the jury to let appellant "go free," by overruling objection thereto.

Complaint of this argument is the subject of appellant's ground of error 13.

and a motel key tag—as the prosecutor himself told the trial judge—was that appellant was a motel burglar in general, and therefore, committed the motel burglary of the Wilson family.[3]

■ Evidence tending to establish a defendant is a "criminal generally" is patently inadmissible. See generally *Murphy v. State*, 587 S.W.2d 718 (Tex.Cr.App.1979); see also *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972).

The determinative question in this case is whether the erroneous admission of this evidence requires reversal of the conviction, or is harmless.

Under the particular circumstances here appellant's possession and presentation of Glen Wilson's credit card eight to ten hours after it was obtained in a burglary, appears sufficient to support the jury's verdict finding appellant guilty of that burglary; however, we are not able to characterize such evidence as "overwhelming."

Neither will a reading of the record as a whole support the view that the inadmissible evidence could not have influenced the jury's verdict. Indeed, the prosecutor's arguments illustrate how critical the State thought it to be to its case:

"He brought in no evidence to show that the man didn't commit the crime. * * * We don't have the key to the Red Carpet Inn, as he told you. We don't have that. These keys were received a month and a half afterwards and the only thing that was ever looked at was Samuel Bordelon's car. We couldn't go into his house. * * * *For all I know, he might throw away keys every time a burglary is committed, I don't know.*

[Objection on ground that 'he's arguing that Mr. Bordelon has committed other burglaries,' overruled.]

\*　\*　\*　\*　\*　\*

It is the law and always presumed that recent, unexplained, explicit and conscious possession of stolen property is sufficient evidence upon itself to base a verdict of guilty.[4] * * * *But we've showed you more; we've showed you a lot more* and that's all you need.

\*　\*　\*　\*　\*　\*

One more piece of evidence. Finally, Detective Gates told you that when he inventoried his car ..., they found, in a briefcase four motel keys [5] and a tag.... Now I ask you, why did he have the motel keys?

Do you remember how the room was entered? No sign of forcible entry. You remember the man locked the door? Why did he have the motel keys?

Do you think he has a key collection *or is it because he's a motel burglar? That is evidence that he is guilty beyond a reasonable doubt.*

\*　\*　\*　\*　\*　\*

[Prosecutor sets up a hypothetical robbery of a neighbor with circumstantial evidence similar to that adduced herein.] Don't you know right then who did it? And especially if the evidence is uncontested?

[Objection overruled]

If you don't catch up with that man right then—but the neighbor says, 'Look, whoever was in my house, *they had burglary keys.* They didn't break in.' You don't catch up with that man right then, but a month and a half later, you do.... *and you see burglary tools.*

---

3. If the prosecutor's suggested analogue between these items and "burglar tools" had been a true one, the evidence might have been more probative than prejudicial. But possession of burglar tools is admissible in burglary cases as a circumstance from which it may be inferred that such tools *were used to commit the primary offense.* In the instant case, the evidence was undisputed that the motel keys *could not have been used* to burglarize the Wilsons.

4. Appellant's objection to this highly improper argument [see *Hardesty v. State*, 656 S.W.2d 73 (Tex.Cr.App.1983); and *Hite v. State*, 650 S.W.2d 778 (Tex.Cr.App.1983) ], was overruled.

5. In fact, only two keys were found.

[Defense Counsel]: Your Honor, I object to him saying 'those are burglary tools.' That's an improper statement.

*THE COURT: The objection is overruled.*

[By Prosecutor]: Don't you know then the man did it? That's guilt beyond a reasonable doubt.

Now, you come up and you can go back there and come up with all sorts of wild theories; let him off; let the man go free, and say, 'Here, Mr. Bordelon, I'm sorry. I'm sorry we ever bothered you. *Here, here's the key back.*' You could do that.

[Objection overruled]

\*    \*    \*    \*    \*    \*

I will never be able to present to you a stronger case. Think about it. Use your common sense. We put him in possession of the stolen property, everything that was stolen.[6]

\* \* \* It's just like the same type of hat. We placed him right across the street when the crime was committed, easy access, just go over and do it. *We showed, right there the keys that he needed to commit it.*

That's guilt beyond a reasonable doubt. . . ."

■ The determination of whether errors of this nature require reversal of a conviction cannot be made without a careful and complete reading of the record as a whole, deliberate consideration of the facts adduced, the contested issues in the case and the cumulative force of the evidence.

■ In the instant case, the erroneous admission of this evidence was seriously compounded by the prosecutor's use of it during final argument as he outlined the State's theory of what the evidence established—less than accurately at that. If we are to label a patent evidentiary error "harmless," it must be demonstrated with clarity, in the context of the case, that the inadmissible evidence has not made any material contribution to the jury's verdict. This we cannot do here.

■ The jury's consideration of the inference arising from the complained of evidence may well have been determinative in the jury's verdict of guilty, under the record before us.

Accordingly, the judgment of conviction is reversed and this cause is remanded to the trial court.[7]

W.C. DAVIS, Judge, dissenting.

The majority finds the admission of the motel keys to be harmful error. In light of the uncontradicted proof of appellant's unexplained possession and use of Glenn Wilson's credit card eight to ten hours after it had been stolen, I do not agree that the error is harmful. Also introduced were photographs of appellant wearing a hat similar to the one that Wilson saw the burglar wearing. Compare *Cunningham v. State,* 500 S.W.2d 820 (Tex.Cr.App.1973) in which admission of evidence more prejudicial than that in the instant case was held harmless. In view of the evidence of guilt, I dissent to the majority's holding that the error is harmful.

ONION, P.J., joins.

---

6. The only stolen item the evidence placed in appellant's possession was the VISA credit card.

7. Because of our disposition of appellant's 10th and 11th grounds of error, we need not address the other 12 grounds he advances.